IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jeanette L. Gryder, | ) | Civil Action No. 8:13-cv-03551-MGL-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

        This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]

For the reasons set forth below, it is recommended that the decision of the Commissioner

be affirmed.

---

        [1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

        [2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social
Security after a hearing under paragraph (1) shall be subject to judicial review as provided
in section 405(g) of this title to the same extent as the Commissioner's final determinations
under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

In April 2010, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of March 1, 2008.[3]  [R. 133–162.]  The claims were denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 75–85, 87–90.]  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on May 11, 2012, ALJ Frances W. Williams conducted a de novo hearing on Plaintiff's claims.  [R. 22– 53.]

The ALJ issued a decision on June 8, 2012, finding Plaintiff not disabled.  [R. 10–21.]  At Step 1[4], the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through June 30, 2011, and had not engaged in substantial gainful activity since March 16, 2010, the amended alleged onset date.  [R. 12, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease with a history of three lumbar surgeries; obesity; and left hip tendonitis.  [R. 12, Finding 3.]  The ALJ also discussed depression and diabetes but did not "elevate[] these issues to be included in the severe impairments to be discussed in [the] decision."  [R. 13.]  At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix L.  [R. 13, Finding 4.]  The ALJ specifically considered Listings 1.02 and 1.04.  [R. 13–14.]

_____

[3]Plaintiff, through her attorney,  amended the alleged onset date of disability to March 16, 2010.  [R. 25–26.]

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: she remains able to stand and walk two hours in an eight hour work day; opportunity to change positions at work station at thirty minute intervals; occasionally stoop, crouch, and kneel. Additionally, she remains able to occasionally climb stairs and ramps, but she should avoid ladders, ropes, and scaffolds. She is limited to occasional lower extremity controls, and she is unable to crawl.

[R. 14, Finding 5.]  Based on this RFC, the ALJ determined at Step 4 that Plaintiff was capable of performing her past relevant work as a data entry clerk, office helper, and an accounting clerk.  [R. 16, Finding 6.]  Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from March 16, 2010, through the date of the decision. [R. 17, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 6], but the Council declined review [R. 1–5].  Plaintiff filed this action for judicial review on December 20, 2013.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that an award of benefits or remand is necessary for the following reasons:

1.  the ALJ failed to explain the reasons for attributing little weight to the opinion of Plaintiff's long-time treating practitioner as to the severity and functional effects of Plaintiff's severe impairments [Doc. 17 at 5–6];

2.  the ALJ failed to properly evaluate Plaintiff's subjective allegations of pain and limitations arising from her sever impairments [*id.* at 7–9]; and

3

3.      the ALJ failed to consider the testimony of the Vocational Expert that concentration impairment would prevent a claimant from performing Plaintiff's past relevant work [*id.* at 9–11].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that:

1.      substantial evidence supports the ALJ's decision to give little weight to the opinion of Plaintiff's treating nurse practitioner [Doc. 19 at 4–7];

2.      substantial evidence supports the ALJ's finding that Plaintiff's subjective allegations of pain and limitations were not completely credible [*id.* at 7–9]; and

3.      substantial evidence supports the ALJ's finding that Plaintiff could return to her past relevant work [*id.* at 9–10].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

4

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and

6

immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.  *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.  *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

---

is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to

13

support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment

to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical

15

discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain

16

> is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## <u>APPLICATION AND ANALYSIS</u>

**Treating Practitioner's Opinion**

Plaintiff contends the ALJ erred by giving little weight to the opinion of nurse practitioner Cathy Porter ("Porter"), who opined that Plaintiff was completely disabled due to the physical and mental limitations from her ongoing severe impairments.  [Doc. 17 at 6.]  Plaintiff argues the ALJ incorrectly found Porter's opinion was not supported by the record and incorrectly found that the Porter's assessment of Plaintiff's limitations was not credible in light of a lack of reference to a specialist or for any aggressive treatment. [*Id.*]

A nurse practitioner is not a medical doctor and, under the applicable regulations, a nurse practitioner is not an acceptable medical source for purposes of providing medical opinions.  20 C.F.R. § 404.1513(a).  Instead, a nurse practitioner is considered within the category of "other sources" whose opinion is not entitled to controlling weight.  *See* SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment.  Instead there must be evidence from an 'acceptable medical source' for this purpose.")  Social Security Ruling 06–03p describes the process by which the Social Security Administration considers the opinions of treating sources such as nurse practitioners who are not acceptable medical sources.  The Ruling provides that, although the factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources."  SSR 06-3p at *4.  These factors include (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support

18

an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. SSR 06-3p at *4–5. The evaluation of an opinion from a medical source who is not an acceptable medical source depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case. SSR 06-3p at *5.

In evaluating the opinion of a nurse practitioner, the ALJ is required to explain the weight given to the opinion or otherwise ensure that the discussion of the evidence in the decision allows a subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. SSR 06-3p at *6. The ALJ does not, however, have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e).

### *Porter's Opinion*

Plaintiff's medical records show that she first saw Porter on March 16, 2010 for a Best Chance breast/pelvic exam. [R. 239–242.] Due to complaints of back pain, an x-ray of the lumbar spine was performed, which showed minimal spondylolisthesis of L5 on S1 with moderate L5-S1 and moderate-to-severe L4-5 disc space narrowing. [*Id.*] Marginal L3-4 and L4-5 spurring was present with sclerotic arthritic L4-5 and L5-S1 facet change. [*Id.*] Porter diagnosed mild lower lumbar spondylosis with minimum spondylolisthesis and

19

degenerative disc disease as described.  [*Id.*]  Plaintiff''s mental status was also described as alert; oriented x3 with appropriate mood and affect; she was able to articulate well with normal speech/language, rate, volume and coherence; associations were intact; she demonstrated appropriate judgment; and insight and attention span and ability to concentrate were normal.  [*Id.*]

On March 17, 2010, Plaintiff returned for a recheck of her hyperlipidemia which was diagnosed in December 2009.  [R. 243–245.]  Plaintiff's hyperlipidemia was described as moderate to severe and improving.  [*Id.*]  Treatment notes also indicate complaints of hypertension and low back pain.  [*Id.*]  On physical exam, Plaintiff was noted to be alert and in no acute distress.  [*Id.*]  Plaintiff's mental status exam showed she was oriented x3 with appropriate mood and affect with associations intact.  [*Id.*]

On June 16, 2010, Plaintiff returned to Porter for a recheck of her hypertension.  [R. 253–256.]  Treatment notes indicate Plaintiff was feeling well and exercising by walking three times a week before the weather got too hot, with no increase in back pain while walking; increased back spasms would occur, however, after a few hours.  [*Id.*]  On mental status exam, Plaintiff appeared well groomed and in no acute distress.  [*Id.*]  A neurological evaluation showed cranial nerves (CN) II–VII grossly intact, normal attention span and ability to concentrate, and normal coordination.  [*Id.*]

On August 20, 2010, Plaintiff returned to Porter for a recheck of her low back pain.  [R. 275–278.]  Treatment notes indicate that on mental status exam, Plaintiff was restless, well groomed, and in no acute distress.  [R. 277.]  Neurological exam revealed normal attention span and ability to concentrate and normal coordination.  [*Id.*]  Plaintiff was also noted to be oriented x3 with appropriate mood and affect and intact associations.  [*Id.*]  On

20

musculoskeletal exam, Plaintiff showed decreased range of motion and painful movements; tenderness between lumbar vertebra; and tenderness over the sacral region. [*Id.*] Plaintiff's diabetes, hypertension, and hyperlipidemia were all noted to be controlled. [*Id.*]

On August 31, 2010, Plaintiff returned for a recheck of her diabetes. [R. 279–281.] Treatment notes indicate Plaintiff was feeling well and that no anxiety, depression, or insomnia was present. [R. 280.] Neurological evaluation indicated normal attention span and ability to concentrate and normal coordination. [*Id.*] Plaintiff's mental status exam showed Plaintiff was oriented x3 with appropriate mood and affect with intact associations. [*Id.*] Musculoskeletal exam of the right hip showed no pain and full range of motion. [*Id.*]

In a letter dated August 31, 2010, Porter provided the following statement regarding the status of Plaintiff's health issues:

> Jeanette Gryder [] is an established patient at Sandhills Medical Foundation. Due to chronic back pain from herniated discs and previous lumbar fusion in 1994 and subsequent surgery to remove bone fragments in 2004, she is unable to work. Even with aggressive pain management it is likely that his is a permanent disability.

[R. 269.]

On June 13, 2011, Plaintiff presented to Porter on follow up after being seen in the emergency room for a urinary tract infection and pyelonephritis. [R. 370–374.] Neurological exam revealed normal attention span, an ability to concentrate, and normal coordination. [*Id.*] Neuropsychiatric exam resulted in finding Plaintiff oriented x3 with appropriate mood and affect and associations intact. [*Id.*]

Treatment notes after Plaintiff's date last insured—June 30, 2011—indicate that on October 21, 2011, Plaintiff presented to Porter for a Best Chance breast/pelvic exam. [R. 367–368.] Treatment notes indicate Plaintiff was feeling well and that there was no anxiety,

change in sleep pattern, or depression present. [*Id.*] Plaintiff's mental status was alert and

her general appearance was cooperative and well groomed; no acute distress was noted.

[*Id.*] On November 18, 2011, Plaintiff returned to Porter with complaints of depression and

for a recheck of her diabetes and hypertension. [R. 362–365.] Plaintiff noted her

symptoms included loss of interest, depressed mood, fatigue, and anxiety. [*Id.*] Porter

noted Plaintiff was well groomed and in no acute distress. [R. 364.] Neurological exam

revealed CN II–VII grossly intact; normal attention span and ability to concentrate; normal

coordination; and agitated affect and intact associations. [*Id.*] Porter gave Plaintiff a

behavioral health referral. [*Id.*]

On February 10, 2012, Plaintiff presented to Porter with acute bronchitis.

[R.377–379.] Porter noted Plaintiff presented not feeling well and with anxiety, depression,

and insomnia. [*Id.*] Plaintiff's mental status was alert and her appearance was mildly ill and

well groomed and in no acute distress. [*Id.*] Neurological exam revealed CN II–VII grossly

intact, normal attention span and ability to concentrate, and normal coordination. [R. 379.]

Neuropsychiatric exam revealed Plaintiff was oriented X3 with appropriate mood and affect

and with associations intact. [*Id.*]

### The ALJ's Treatment of Porter's Opinion

Considering Porter's August 31, 2010 opinion or statement in light of the record

evidence and her own treatment notes, the ALJ gave little evidentiary weight to the opinion

explaining as follows:

> The opinions of Cathy Porter, a treating nurse, finding the
> claimant to have physical and mental limitations that would
> preclude all work is given little evidentiary weight as the brief
> opinion is not supported by the evidence of record (Exhibits 3F,
> 5F, 12F-14F). The alleged medical restrictions are absolutely

22

> unsupported in the record. The record clearly shows a significant improvement to the claimant's functional abilities after the November 2010, discectomy surgery. Likewise, this extreme opinion is not consistent with Nurse Porter's own treatment notes opinion. The claimant was not referred to specialist nor has Nurse Porter suggested aggressive treatments. In addition, the claimant's previously detailed high level of function is contrary to the significant limitations found by Nurse Porter which ultimately compromises the overall credibility of the opinion. Accordingly, the undersigned finds that the opinions by Nurse Porter are entitled to little weight.

[R. 16.]

### Discussion

As stated previously, Porter is a nurse practitioner and, as such, her opinion was not entitled to any controlling weight. *See* 20 C.F.R. § 404.1513 (Opinions of nurse practitioners not entitled to same weight as the opinion of a physician); *cf. Nance v. Apfel*, 131 F.3d 135, at *3 (4th Cir. 1997) (unpublished table decision) ("[T]he opinions of those other than trained medical doctors, such as nurses, are not afforded the same weight as the opinions of physicians."). In deciding the weight to assign to Porter's decision, the ALJ cited the records and opinions of other medical sources, as well as Porter's own prior treatment notes, both of which were inconsistent with Porter's final opinion. [R. 16.] By explicitly considering and then explaining his reasons for discounting the nurse practitioner's opinion, the ALJ met the requirements of Social Security Ruling 06–03p. Additionally, Plaintiff has failed to point to any evidence of record supporting the extreme limitations cited by Porter. Accordingly, the Court finds the weight giving to Porter's opinion is supported by substantial evidence.

**Credibility**

Plaintiff argues the ALJ improperly discounted her pain complaints, finding them contrary to the medical record.  [Doc. 17 at 8.]  Plaintiff also argues the ALJ erred by finding Plaintiff's pain complaints not credible because they are inconsistent with the RFC assessment.  [*Id.*]  Plaintiff contends her pain complaints are not at all inconsistent with the medical records which clearly show that, despite numerous efforts on her part to obtain relief, none of the medical treatments have been successful at relieving her pain.  [*Id.* at 8–9.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  SSR 96–7p, 61 Fed. Reg. at 34,485.  The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve

24

the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). If the ALJ points to substantial evidence in

support of his decision and adequately explains the reasons for his finding on the claimant's

credibility, the court must uphold the ALJ's determination. Mastro, 270 F.3d at 176 (holding

that the court is not to "undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of" the agency).

### The ALJ's Credibility Determination

After careful consideration of the evidence, the undersigned
finds that the claimant's medically determinable impairments
could reasonably be expected to cause the alleged symptoms;
however, the claimant's statements concerning the intensity,
persistence and limiting effects of these symptoms are not
credible to the extent they are inconsistent with the above
residual functional capacity assessment.

The claimant stated that she has undergone three spine
surgeries, in 1993, 2003 and November 2010 (Exhibit 12E).
On her application for disability benefits, she described
debilitating levels of back pain, which she asserted reduced her
daily activities to laying down most of the day (Exhibit 12E, pg.
5). She stated that she was able to take care of her grooming
needs and she did not list any medication side effects as an
explanation for her fatigue (Exhibit 8E, pg. 3 and Ex. 12E, pg.
4). The objective medical evidence does not support her
subjective allegations.

In the hearing, the claimant testified that she was able to
perform light household chores including, meal preparation,
wash dishes, and floor sweeping. She added that she was
able to cook three or four times a week for herself and her
granddaughter. She stated that her husband and daughter
prepares meals when her pain levels prevent the activity. She
resides with her husband, daughter, brother and two young
grand children (aged 1 and 3). She stated that she was able
to climb the five to six stairs to her residence. She stopped
driving because of non-payment of taxes not because of any
disability related conditions. She specifically stated that she
did not experience any physical problems driving.

25

The record shows that the claimant experienced pain and discomfort due to a large L5-S1 disc herniation (Exhibit 8F, pg. 2). In November 2010, the claimant underwent a successful right-sided L5-S1 discectomy (Exhibit 10F, pg. 1). In January 2011, her orthopedic surgeon, Dr. Parrott reported that she continued to have good relief of her right leg pain post operatively (Exhibits 9F and 10F, pg. 1-2). Dr. Parrott added that the back pain was "definitely improved" and he prescribed physical therapy (Exhibit 10F, pg. 2).

After the November 2010 discectomy surgery, the claimant did not pursue or require any significant medical treatments, including referrals to specialists, TENS units, increased pain medication, or MRI scans (Exhibit 13F). Treatment notes concerning unrelated minor medical issues continually describe the claimant as generally well Exhibits 12F and 13F). In February 2012, her treating physician noted a period of excessive weight gain and she was instructed to maintain a healthy diet (Exhibit 14F, pg. 1). On her application for disability benefits, she stated that her symptoms of pain forced her to lie down almost all day. In April 2012, she was able to travel to the beach (Exhibit 12F, pg. 6). The credibility of her subjective statements was further diminished when she reported that she joined an aquatic exercise program encouraged by her treating physician (Exhibit 13F, pg. 12 and 14F, pg. 3). She has not required assistive devices for ambulation, strongly suggesting her condition improved.

[R. 15.]

### *Discussion*

Upon reviewing the ALJ's decision regarding Plaintiff's credibility, the Court does not find that the ALJ conducted an improper credibility analysis or that her decision otherwise reflects a failure to properly consider the subjective testimony and evidence in this case. To the contrary, the ALJ followed the required two-step process in assessing the credibility of Plaintiff's pain complaints. [R. 14–16.] At step one of the two-part test, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. [R. 14.] The ALJ recognized Plaintiff's claim of disability based on

degenerative disc disease, diabetes, high blood pressure, and numbing of the legs; and also noted that Plaintiff asserted that she experienced radiating leg pain and numbness, nausea, sleep disturbances, reduced stamina, poor morale, lack of self motivation, memory deficits, and reduced range of motion.  [*Id.*]  Plaintiff alleged her impairments have negatively affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and complete tasks, although she maintained the ability to perform household chores, maintain social relationships, complete shopping errands, and complete exercise walks.  [R. 14–15.]

At step two of the two-part test, after considering the evidence, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment.  [R. 15.]  The ALJ explained that while Plaintiff described debilitating levels of back pain which she asserted reduced her daily activities to laying down most of the day, she was able to take care of her grooming needs and did not list any medication side effects as an explanation for her fatigue.  [R. 15.]  The ALJ also noted that Plaintiff testified that she was able to perform light household chores including meal preparation, washing dishes, and floor sweeping; was able to cook three or four times a week for herself and her granddaughter; and was able to climb the five to six stairs to her residence.  [*Id.*]

With respect to the medical evidence, the ALJ noted that after the November 2010 discectomy surgery, Plaintiff did not  pursue or require any significant medical treatments.  [*Id.*]  Additionally, treatment records continually described Plaintiff as generally well, and Plaintiff did not require assistive devices for ambulation.  [*Id.*]  The ALJ also found that the

27

credibility of Plaintiff's subjective statements was further diminished when she reported that she joined an aquatic exercise program encouraged by her treating physician. [*Id.*]

Contrary to Plaintiff's suggestion, the ALJ did not find that Plaintiff did not experience pain; the ALJ merely found that the pain Plaintiff experienced was not disabling. The ALJ sufficiently explained his reasoning for discounting Plaintiff's claim of complete disability due to pain. The ALJ expressly evaluated Plaintiff's pain complaints in accordance with the two-step process outlined in *Craig v. Chater*; and, likewise, the ALJ considered the relevant factors for evaluating the same as outlined in 20 C.F.R. § 404.1529(c)(3). The ALJ's decision reflects that he considered the full range of evidence along with evidence of Plaintiff's testimony, complaints to providers, daily activities, and efficacy of her medication to make his conclusion about the severity of Plaintiff's condition and its impact on her ability to work.

Curiously, Plaintiff does not point to any evidence of record that contradicts or undermines the ALJ's findings. Plaintiff merely seeks to have the Court reweigh the evidence already considered by the ALJ; such an exercise is contrary to law. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir.2001). Thus, the Court finds the ALJ's credibility analysis is supported by substantial evidence.

**VE Testimony**

Plaintiff contends the ALJ's decision completely ignores testimony by the VE, elicited by Plaintiff's counsel, that "concentration impairment due to intractable pain would prevent a claimant from being able to perform any of the past relevant work." [*Id.* at 9.] Plaintiff argues the medical record is replete with evidence of Plaintiff's concentration being affected by her pain and narcotic pain management. [*Id.* at 10.]

28

As an initial matter, the Court notes that the Plaintiff does not challenge the ALJ's RFC finding, which does not include any mental impairment or limitations in concentration. The ALJ also noted that Plaintiff did not list any mental impairments on her application for disability. [R. 13.] Thus, while Plaintiff argues the ALJ erred in not considering the VE's testimony on the additional hypothetical questions posed by Plaintiff's counsel, which included mental limitations related to impaired concentration, the ALJ was not required to include limitations or restrictions in his hypothetical questions that he found were not supported by the record. *Lee v. Sullivan*, 945 F.2d 687, 692 (4th Cir. 1991) (a requirement introduced by claimant's counsel in a question to the vocational expert "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record"); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (vocational expert testimony must be based on a proper hypothetical containing limitations based on the evidence of record to be reliable). Further, Plaintiff has failed to point to any evidence of record showing that Plaintiff's concentration was impaired. To the contrary, treatment notes from Porter consistently indicate Plaintiff's concentration was not impaired. [*See, e.g.*, R. 255, 277, 280, 364, 372, 379.] The Court finds no merit in Plaintiff's argument.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 31, 2015
Greenville, South Carolina